IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| SOUTHLAND RENDA JV, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:21-cv-02550-DCN |
| vs. ) | |
| ) | **ORDER** |
| XYLEM WATERS SOLUTIONS, U.S.A., ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

    The following matter is before the court on defendant Xylem Water Solutions, U.S.A., Inc.'s ("Xylem") motion for partial summary judgment, ECF No. 45. For the reasons set forth below, the court grants the motion for partial summary judgment.

## I.  BACKGROUND

    This case arises from a contract dispute between a contractor and subcontractor for the Charleston Water System ("CWS") sewer system improvements to the West Ashley Tunnel portion. ECF No. 1-1, Compl. ¶ 5. CWS contracted with Southland Renda JV ("Southland") to complete the tunnel. Id. In support of that work, Southland subcontracted with Xylem to purchase pump design services, five model 3400 415-horsepower submersible pumps (the "pumps"), a variety of supporting materials and equipment, various startup and maintenance services related to installation and operation of the pumps, and other similar services and materials including a detailed engineering analysis.[1] Id. ¶ 6. The subcontract was for a price of $999,500 and "stipulated that time

---

[1] The Purchase Order—which the parties refer to as the subcontract—is available as an attachment to Xylem's answer, ECF No. 14-1, and amended answer, ECF No. 17-1. It is also available as an attachment to Xylem's motion for partial summary judgment.

1

was of critical importance under the Subcontract." Id.  Xylem allegedly failed to perform according to the terms of the subcontract by using non-compliant pumps that required multiple repairs and had issues with installation which caused a seventy-four day "critical path delay" to Southland's work on the project which resulted in damages of an amount not less than $1,792,982.78.  Id. ¶ 7.  Pursuant to the terms of the subcontract, Southland withheld payment of $543,408.15[2] to offset Southland's damages.  Id. ¶ 8.  This lawsuit followed.

On July 23, 2021, Southland filed a complaint against Xylem in the Charleston County Court of Common Pleas alleging breach of contract and breach of implied warranties.  ECF No. 1-1, Compl.  On August 10, 2021, Xylem removed the case to federal court pursuant to 28 U.S.C. §§ 1332(a), 1441.  ECF No. 1.  On August 25, 2021, Xylem filed its answer to the complaint and counterclaim for breach of contract against Southland and amended its answer and counterclaim the following day on August 26, 2023.[3]  ECF Nos. 14, 17.  Southland answered Xylem's second counterclaim on September 15, 2021, ECF No. 24, and filed an amended answer to the first counterclaim

---

ECF No. 45-2.  Additionally, the parties agreed that Attachment "A" was a part of the contract, which is also written on the fully executed purchase order, and available at ECF No. 45-3.  The court will reference the subcontract attached to the motion to dismiss, ECF Nos. 45-2, because that attachment includes the fully executed and signed purchase order as well as the fully executed and signed modification to the purchase order.

[2] Xylem argues that Southland wrongfully withheld $758,300.15 which includes the $543,408.15 described by Southland along with a missed milestone billing and for sales taxes, which Xylem avers it is entitled to be paid under the purchase order.  ECF No. 17, Amend. Answer ¶¶ 8, 29.

[3] As far as the court can tell, the key amendment related to the amount Xylem alleges that Southland owes it.  In the first counterclaim Xylem sought $668.345.15 less an amount for Southland's assistance switching out the pumps, ECF No. 14 ¶ 29, whereas in the amended counterclaim Xylem seeks $758,300.15 less that same amount, ECF No. 17 ¶ 29.

on October 21, 2021, ECF No. 26. On January 13, 2023, Xylem filed a motion for partial summary judgment. ECF No. 45. Southland responded in opposition on January 27, 2023, ECF No. 46, and Xylem replied on February 3, 2023, ECF No. 48. As such, the motion has been fully briefed and is now ripe for review.

## II.    STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

## III.    DISCUSSION

Xylem seeks partial summary judgment confirming it is owed a contract balance of $756,644.37 (the "contract balance") pursuant to the express terms of the purchase

order.  ECF No. 45 ¶ 5.  In explanation, that amount arises from the contract price of $999,500 plus sales tax of $88,299.22[4]—totaling $1,087,799.22—for which Southland has issued only one payment to Xylem of $331,154.85.  Id. ¶ 4.  Xylem claims that it is entitled to apply its contract balance as a setoff against any amount the jury may determine Xylem owes to Southland for the alleged project delays.  Id. ¶ 6.  If partial summary judgment is granted, "the remaining issue to be tried will be what, if any damages, Southland can prove it suffered."  ECF No. 48 at 1–2.

Southland disputes this claim and argues that since Xylem did not create invoices for taxes for over six years and because it failed to invoice its final payment for over two years, there exists a question of fact about whether Xylem has waived its claims related to these invoices.  ECF No. 46 ¶ 1.  Additionally, Southland argues that Xylem committed a prior material breach because Xylem took over two years to complete a project that required performance within twenty-two weeks.  Id.  Xylem contests Southland's conclusions by indicating there is no evidence of intentional waiver because it has invoiced Southland for the full amount due notwithstanding the allegedly delayed contract.  ECF No. 48 at 2.  Additionally, Xylem disagrees with Southland's interpretation of prior material breach requiring forfeiture of all monies owed to Xylem—instead it argues that the law provides that Southland may recoup damages from the breach as an offset of the total money owed, which should not impact the total contract price at issue in the motion for partial summary judgment.  Id.

---

[4] Xylem reaches this number by applying the sales tax rates for the respective periods.  ECF No. 45-1 at 3.  Specifically, the 2015 invoice was subject to an 8.5 percent sales tax rate.  Id.  The sales tax applicable for the invoices filed between October 2019 and March 2021 was 9 percent.  Id. at 3–4.  In total, the total sales tax due on the purchase order comes to $88,299.22.  Id.

In brief, the subcontract specified that Xylem would be paid $1,087,799.22 for completing the project by a specified date,[5] and while Xylem completed the project, it did so approximately a year and a half late. ECF No. 45-2; Compl. ¶ 7. For the instant motion, the parties primarily dispute whether the allegedly delayed completion ("prior material breach") and late invoicing for payment ("waiver") impacts the total contract price—neither party contests whether the alleged delay is just cause for Southland to seek damages from the delay. See Compl. ¶ 8; ECF No. 45-1 at 2 ("Xylem is entitled to apply its contract balance as a setoff against any amount the jury may determine Xylem owes to [Southland] for alleged Project delays.").

Preliminarily, since this is a contract dispute, the court grounds its reasoning in the express terms of that contract. "The court's duty is to enforce the contract made by the parties regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully." Phillips & Jordan, Inc. v. McCarthy Improvement Co., 2020 WL 5793377, at *19 (D.S.C. Sept. 29, 2020) (quoting Ellis v. Taylor, 449 S.E.2d 487, 488 (S.C. 1994)). In other words, the court must ascertain and give effect to the intention of the parties, looking first to the language of the contract. Wallace v. Day, 700 S.E.2d 446, 449 (S.C. Ct. App. 2010). "When the language of a contract is clear and unambiguous, the determination of the parties' intent is a question of law for the court." Id. "The court is without authority to consider parties' secret intentions, and therefore

---

[5] The court has thus far been unable to find the exact dates that the subcontract was meant to be completed and the date it was in fact completed. The closest the court has come to identifying those dates are the series of alleged delays noted in the complaint which, in sum, add up to approximately a year and a half. See Compl. ¶ 7.

words cannot be read into a contract to impart an intent unexpressed when the contract was executed." Pee Dee Stores, Inc. v. Doyle, 672 S.E.2d 799, 802 (S.C. Ct. App. 2009).

A federal court sitting in diversity should use the federal summary judgment standard involving contract interpretation and ambiguity. See World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 245 (4th Cir. 1992); Monsanto Co. v. ARE-108 Alexander Rd., LLC, 632 F. App'x 733, 736 (4th Cir. 2015); Keystone Ne., Inc. v. Keystone Retaining Wall Sys., LLC, 2015 WL 1186398, at *6 (D.S.C. Mar. 16, 2015), amended on reconsideration on other grounds, 2015 WL 1400102 (D.S.C. Mar. 25, 2015). "A court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation." World-Wide Rights Ltd. P'ship, 955 F.2d at 245. The court must first determine if the contract at issue is ambiguous. Id. If "the contract is unambiguous on the dispositive issue," it may grant summary judgment. Id. However, if the court determines that the contract is ambiguous, "it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if that evidence is, as a matter of law, dispositive of the interpretive issue, grant summary judgment on that basis." Id. (citing Jaftex Corp. v. Aetna Cas. & Surety Co., 617 F.2d 1062, 1063 (4th Cir. 1980)). But if the review of the extrinsic evidence still "leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact." Id. "Therefore, summary judgment is appropriate when the contract in question is unambiguous or when an ambiguity can be definitively resolved by reference to extrinsic evidence." Wash. Metro. Area Transit Auth. v. Potomac Inv. Props., Inc., 476 F.3d 231, 235 (4th Cir. 2007).

As such, the court examines whether waiver or prior material breach modify the express terms of the subcontract such that the court cannot issue partial summary judgment as to the contract balance.

**A.  Waiver**

The court first notes that Southland raises the affirmative defense of waiver to contest Xylem's motion for partial summary judgment on the question of the total contract amount Southland owed to Xylem.  See ECF No. 46 ¶¶ 17 ("[T]here are genuine disputes of material fact and in some cases though the facts are not disputed, there is a dispute as to the conclusions that can be drawn from them due to affirmative defenses."). In brief, Southland contests Xylem's motion by saying that since Xylem was lax in its collection of the amount due, it has waived the right to collect the express and agreed upon contract amount.  The court examines that contention below, finds it to be without merit, and consequently holds that Southland's defense of waiver should not preclude Xylem for recovering from the amount due as set forth in the contract.

A waiver is a voluntary and intentional abandonment or relinquishment of a known right.  Janasik v. Fairway Oaks Villas Horizontal Prop. Regime, 415 S.E.2d 384, 387 (S.C. 1992).  It may be either express or implied.  Lawrimore v. Am. Health & Life Ins. Co., 276 S.E.2d 296 (S.C. 1981).  Waiver may be implied from circumstances indicating an intent to waive.  Jacobs v. Zurich Am. Ins. Co., 2022 WL 16952013, at *2 (D.S.C. Nov. 15, 2022) (quoting Bonnette v. State, 282 S.E.2d 597 (S.C. 1981)). Consequently, acts inconsistent with the continued assertion of a right, such as a failure to insist upon the right, may constitute waiver.  Covil Corp. ex rel. Protopapas v. Penn. Nat'l Mut. Cas. Ins. Co., 870 S.E.2d 191, 196 (S.C. Ct. App. 2022).  "Waiver requires a

7

party to have known of a right, and known that the party was abandoning that right." Mac Papers, Inc. v. Genesis Press, Inc., 826 S.E.2d 874, 880 (S.C. Ct. App. 2019) (quoting Strickland v. Strickland, 650 S.E.2d 465, 470–71 (S.C. 2007)). "[A] waiver analysis focuses on a party's 'unequivocal intent to relinquish a known right.'" Strickland, 650 S.E.2d at 471 (quoting 7 S.C. Jur. Estoppel and Waiver § 17 (1991)). The determination of whether a party's actions constituted waiver is a question of fact. Madren v. Bradford, 661 S.E.2d 390, 394 (S.C. Ct. App. 2008). Summary judgment should be denied where the facts, although not in dispute, are nonetheless subject to conflicting inferences. Lyles v. BMI, Inc., 355 S.E.2d 282, 285 (S.C. Ct. App. 1987).

Southland argues that by failing to invoice taxes for six years, and for failing to prove that any invoices were sent to Southland for the other amounts owed (outside of requests for admission), Xylem has impliedly waived its right to bill for taxes and for the other amounts owed. ECF No. 46 ¶¶ 18–23. Rather, Southland claims that because of Xylem's failure to promptly seek payment, "it is reasonable to infer that Xylem has waived their right to collect on those amounts not invoiced including any taxes." Id. ¶ 23. Xylem disagrees with this characterization and states that it "has invoiced [Southland] for the full amount it is entitled to recover on the Project, including final payment and the applicable sales tax." ECF No. 48 at 4. It avers that to the extent that any amounts were not initially invoiced, "it was not a product of intentional waiver, but of inadvertence." Id.

The court agrees—Southland has failed to demonstrate that Xylem has acted with "unequivocal intent" to relinquish its right to payment, see Strickland, 650 S.E.2d at 471, nor has Southland provided any evidence that Xylem knew it was abandoning that right

8

by its delinquency in seeking payment, see Mac Papers, Inc., 826 S.E.2d at 880. The court has found one case where a party's failure to collect payment could be construed as waiver, but that case also included a message from the waiving party indicating a willingness to forgo that payment. See Lyles, 355 S.E.2d at 283–85. Specifically, the South Carolina Court of Appeals found that a party's failure to collect a portion of contractually specified rent for approximately nineteen years, in addition to the party's prior message indicating a willingness to waive that portion of the rent without specifying the term of that waiver, created an issue of fact as to implied waiver that had to be left to the jury and could not be decided at summary judgment. 355 S.E.2d at 283–85. As such, the failure to collect alone was not sufficient to clearly establish waiver—rather, the court considered the failure to collect alongside the party's clear and unequivocal intent to waive that portion of payment to find that a genuine dispute of material fact remained as to whether a party had waived its right to payment. See id. In contrast, neither Southland nor Xylem point to any message indicating a willingness to waive the contract price. See generally ECF Nos. 45–46, 28. Furthermore, there is not the same evidence of excessive delay seen in Lyles because the longest period that Xylem went without invoicing the contested amount is purportedly six years. See ECF No. 46 ¶ 23.

  Consequently, the court finds that Southland has not adequately established that the affirmative defense of waiver creates a genuine dispute of material fact as to the total contract amount due to Xylem for completion—albeit delayed completion—of the project. The court next turns to the affirmative defense of prior material breach to determine whether Xylem's failure to meet the deadlines set forth in the contract constituted a prior material breach.

### B. Prior Material Breach

The prior material breach doctrine "only excuses a non-breaching party's performance when such obligations were dependent upon the promises that the breaching party failed to perform." Monster Daddy, LLC v. Monster Cable Prods., Inc., 483 F. App'x 831, 835 (4th Cir. 2012) (applying South Carolina law). Thus, a party's breach of one promise does not discharge the non-breaching party's duties with respect to unrelated or independent promises to perform under the parties' contract. Id.

It is well established under South Carolina law that "[w]here time is of the essence of the contract, failure to perform within the time stipulated is ground for rescission. If time is not of the essence, mere delay in performance is not considered a material breach justifying rescission." Gen. Sprinkler Corp. v. Loris Indus. Devs., Inc., 271 F. Supp. 551, 558 (D.S.C. 1967) (quoting 17A C.J.S. Contracts § 422(1) at 50). In the instant case, both parties signed an amendment to the purchase order that changed the clause stating "time is of the essence" to "time is of critical importance," which included, in pertinent part, a statement that "Xylem. . . cannot accept the implied liabilities associated with the 'time is of the essence' clause." See ECF No. 45-2 at 8. As such, it is clear from the plain terms of the contract that both parties agreed that the "time is of the essence" liability framework did not apply to the contract. In fact, the unambiguous language of the timeliness clause expressly waived adoption of the additional liabilities associated with "time is of the essence" clauses—meaning that failure to comply with the pre-arranged schedule did not automatically constitute material breach. ECF No. 45-2 at 8 ¶ 6. Thus, adoption of Southland's reasoning that deviation from the schedule constituted material breach would impermissibly render an independent and

unambiguous provision in the parties' contract meaningless, in violation of South Carolina law. See Schulmeyer v. State Farm Fire & Cas. Co., 579 S.E.2d 132, 134 (S.C. 2003) (holding that a contract's unambiguous language determines its force and effect); Valley Pub. Serv. Auth. v. Beech Island Rural Cmty. Water Dist., 462 S.E.2d 296, 299 (S.C. Ct. App. 1995) (explaining that each term in a contract "must be considered and given effect if possible").

Moreover, complete performance of the contract was not dependent upon the performance of any one specific contract provision contained in the settlement agreement.[6] See ECF No. 45-2. As such, the court finds that Southland's claim for prior material breach to be without merit because the express terms of the contract specified two remedies for material breach of deadline, neither of which require Xylem to finish the contract and forfeit payment. ECF No. 45-2 at 5 ¶ 6; see Ellie, Inc. v. Miccichi, 594 S.E.2d 485, 502 (S.C. Ct. App. 2004) ("Where an agreement is clear and capable of legal interpretation, the courts only function is to interpret its lawful meaning, discover the intention of the parties as found within the agreement, and give effect to it."). Without

---

[6] The court notes that Southland reserved to itself certain rights if Xylem failed to meet the timeline of the subcontract. See ECF No. 45-2 at 5 ¶ 6, at 8 ¶ 6. Namely, Southland could cancel all or any portion of the contract without liability and purchase on the open market the materials or equipment that were not timely delivered. Id. at 5 ¶ 6(a). Alternatively, Southland could require Xylem to reimburse it for any and all liquidated and/or actual damages attributable to or caused by Xylem's failure to meet the deadlines of the subcontract. Id. at 5 ¶ 6(b). Notably, some dispute could exist regarding the express terms of damages of the contract because Xylem changed, and Southland signed off on, the liquidated damages clause ("Xylem . . . does not accept liquidated damages.") and specifically disclaimed responsibility for incidental, special or consequential damages. Id. at 8 ¶ 6. However, most relevant to the issue of material breach, both parties agreed to modify the "time is of the essence" clause to that of "time is of critical importance," because Xylem "cannot accept the implied liability associated with the 'time is of the essence' clause." Id.

more, the court cannot find that prior material breach prevents Xylem from offsetting any future damages in this case against the total contract amount it is due.[7]

Thus, the court grants partial summary judgment on Xylem's counterclaim against Southland. As such, the case will proceed to determine whether and how much Southland is owed for Xylem's alleged failure to perform in accordance with the contract, with damages offset by whatever amount is owed for performance.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion for summary judgment, ECF No. 45.

---

[7] Equitable considerations prompt the court to reach the same conclusion. Southland received the benefit of the bargain—installed and maintained pumps—albeit a year and a half late. "The doctrine of substantial performance was conceived for the case where a plaintiff's partial performance has already given to a defendant substantially all that he bargained for and is of such a nature that it cannot be returned." Clardy v. Bodolosky, 679 S.E.2d 527, 531 (S.C. Ct. App. 2009) (quoting Coastal Seafood Co., Inc. v. Alcoa S.C., Inc., 381 S.E.2d 502, 503 (S.C. Ct. App. 1989). In similar cases where a breaching party nevertheless substantially performs and the contract is "of such a nature that it cannot be returned . . . , [j]ustice can best be achieved in such a case by a setoff against the contract price rather than by denial of recovery of the contract price." Diamond Swimming Pool Co. v. Broome, 166 S.E.2d 308, 311 (S.C. 1969). Under this theory, Xylem has a strong argument—one that Southland has not contested with evidence or contractual provisions—that partial summary judgment on its counterclaim for the remainder of the contract price should be granted.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**March 23, 2023
Charleston, South Carolina**

13